**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEPTEMBER PROPERTIES LLC, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-988 |
| v. | : | |
| | : | |
| MILLIONAIRE GALLERY, INC., | : | |
| Defendant. | : | |

**September 18, 2018**                                                      **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff September Properties LLC ("September Properties") brings suit against

Defendant Millionaire Gallery, Inc. ("Millionaire") for breach of contract.  I exercise diversity

jurisdiction over September Properties' claim pursuant to 28 U.S.C. § 1332.[1]  Millionaire moves

to dismiss or transfer this action to the United States District Court for the Southern District of

Florida based on improper venue.  In the alternative, Millionaire moves to dismiss or transfer this

action to the Southern District of Florida based on the convenience of parties and witnesses.  I

will deny Millionaire's motion.

## II. BACKGROUND[2]

Plaintiff September Properties is a Florida limited liability company and its sole member

is a citizen of Pennsylvania.  Defendant Millionaire is a Florida corporation with its principal

---

[1] Millionaire is incorporated, and has its principal place of business, in Florida.  Therefore, Millionaire is a citizen of Florida.  *See* 28 U.S.C. § 1332(c)(1) ("[A]corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . .").  September Properties is a Florida limited liability company and its sole member is a citizen of Pennsylvania.  Therefore, September Properties is a citizen of Pennsylvania. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of each of its members.").  Diversity jurisdiction exists because the parties are citizens of different states and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(1).

[2] All facts are taken from September Properties' Complaint, unless otherwise noted.

place of business located in Florida.  The sole owners of Millionaire "live in Miami, Florida, and have no connection to Pennsylvania."  Bruce Matthews Decl. ¶ 8, ECF No. 18-1.  Additionally, "Millionaire has no business presence or employees in Pennsylvania."  *Id.* ¶ 7.

Beginning in March or April 2015, Millionaire "approached [the sole member of September Properties] in Pennsylvania" for the purpose of leasing a property located in Key West, Florida.  Christopher Scott D'Angelo Decl. ¶ 4, ECF No. 22-1.  Thereafter, September Properties negotiated from Pennsylvania via correspondence and telephone with Millionaire to enter into a commercial lease agreement.  D'Angelo Decl. ¶¶ 4, 5.  On February 26, 2016, Millionaire entered into a contract with September Properties to lease a property in Key West, Florida to operate as an art gallery.  As part of the contract, Millionaire agreed to make rent payments to September Properties in Pennsylvania.  D'Angelo Decl. ¶ 7; Def.'s Mot. Ex. A ¶ 1(g)-(h).

From the date of the contract through September 2017, Millionaire paid full rent on the property.  On September 10, 2017 Hurricane Irma hit Key West and severely damaged the property.  Matthews Decl. ¶ 5.  On October 1, 2017 through March 1, 2018, Millionaire failed to pay rent due to September Properties.

Although "the property, current and former employees of Millionaire Gallery, and contractors who inspected the property to assess the damage, are all located in the Southern District of Florida," *id.* ¶ 9, the contract stipulates: "For purposes hereof, Tenant [Millionaire] consents to venue and personal jurisdiction in the courts of Florida and/or Pennsylvania, and waives any right to a jury in any trial."  Def.'s Mot. Ex. A ¶ 15(h).  Additionally, the contract states: "This Lease shall be governed by and construed in accordance with the laws of Florida, without giving effect to the principles of conflict of laws."  Def.'s Mot. Ex. A ¶ 27(m).

## III. DISCUSSION

### A. Venue

The defendant bears the burden of showing that venue is improper. *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). The question of whether venue is proper is "generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). However, venue is also proper if the parties consent to venue in a forum selection clause. *Robertson v. Pfizer Ret. Comm.*, No. 18-0246, 2018 WL 3618248, at *6 (E.D. Pa. July 27, 2018); *Healthcare Servs. Grp., Inc. v. Skyline Servs. Grp.*, No. 17-2703, 2018 WL 637773, at *5 (E.D. Pa. Jan. 30, 2018); *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 706 (E.D. Pa. 2014). *Contra Healthcare Servs. Grp., Inc. v. New Orleans Home for Incurables, Inc.*, No. 18-1765, 2018 WL 2994375, at *1 (E.D. Pa. June 14, 2018).

September Properties contends that Millionaire consented to venue through the forum selection clause in the contract.[3] Although Millionaire agrees that the forum selection clause is valid, Millionaire argues that the forum selection clause only applies to confessions of judgment for possession of the property and does not apply to this breach of contract action.

Whether the forum selection clause applies to this action is a question of contract interpretation. "[S]tate contract law, rather than federal common law, governs the interpretation of . . . forum selection clauses . . . ." *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). In this action, the contract states: "This Lease shall be governed by and construed in accordance with the laws of Florida without giving effect to the principles of

---

[3] September Properties provides additional arguments as to why venue is proper under 28 U.S.C. § 1391(b). Typically, "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does [fall within one of the three categories], venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Atl. Marine*, 571 U.S. at 56. Because I conclude that Millionaire consented to venue, it is unnecessary to reach these arguments.

conflict of laws." Def.'s Mot. Ex. A ¶ 27(m). In a diversity case, a district court "look[s] to the choice-of-law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause." *Collins*, 874 F.3d at 183. "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).

Pennsylvania courts have adopted section 187 of the Restatement (Second) of Conflict Laws. *Id.* Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental    policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in  the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement (Second) of Conflict of Laws § 187. Section 187 clearly indicates that Florida law applies and neither party argues to contrary.

> Under Florida law:
>
> The intent of the parties with respect to any feature of the contract must be determined from an examination of the whole of the contract, and not of

disjointed parts of it. It is not enough to look to an isolated phrase or paragraph of the contract in an effort to determine its true meaning.

*U.S. Rubber Prods. v. Clark*, 200 So. 385, 388 (Fla. 1941). Moreover,

[a]ll the various provisions of a contract must be so construed, if it can reasonably be done, as to give effect to each. Looking to the other provisions of a contract and to its general scope, if one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability.

*World Vacation Travel v. Brooker*, 799 So. 2d 410, 412 (Fla. Dist. Ct. App. 2001).

Here, the forum selection clause provides: "For purposes hereof, Tenant [Millionaire] consents to venue and personal jurisdiction in the courts of Florida and/or Pennsylvania, and waives any right to a jury in any trial." Def.'s Mot. Ex. A ¶ 15(h). The forum selection clause appears in paragraph 15 of the contract titled "DEFAULT," and specifically appears in subparagraph 15(h), a subparagraph which pertains largely, but not exclusively, to confessions of judgment for possession of the property. Millionaire claims that the term "hereof" in the sentence containing the forum selection clause refers only to the subparagraph on confessions of judgment, thus the forum selection clause only applies to confessions of judgment. Millionaire's interpretation of the contract, however, runs contrary to Florida contract law, which provides that any given provision in a contract must be construed in a manner that is consistent with other provisions and the general scope of the contract.

In the lease, the term "hereof" appears not only in the sentence containing the forum selection clause, but in multiple other places in the contract. Where the term "hereof" appears elsewhere in the lease, it refers to the document in its entirety rather than a specific subparagraph unless explicitly noted.[4] In order to avoid the absurd conclusion that the term "hereof" has vastly

---

[4] For example, subparagraph 7(a) states: "As additional security for the full and prompt performance by Tenant of the terms and covenants of this Lease, Tenant has deposited (or shall deposit upon execution *hereof* by Tenant) with Landlord the Security Deposit . . . ." Def.'s Mot. Ex. A ¶ 7(a) (emphasis added).

different meanings in different sections of the contract, the term "hereof" must be construed to refer to the document in its entirety rather than the specific subparagraph pertaining to confessions of judgment. Further bolstering this interpretation of the forum selection clause is the fact that the sentence containing the forum selection clause also contains a jury waiver clause. If this sentence referred solely to confessions of judgment, then there would be no need for a jury waiver clause because the entire purpose of a confession of judgment is to eliminate the need for trial, thus rendering any jury waiver clause superfluous. Lastly, because the forum selection clause appears in the paragraph regarding default generally, and the subparagraph it appears in does not exclusively address confessions of judgment, a reasonable construction of the contract is that the forum selection clause applies to all manner of default, including breach of contract actions. Based on Florida contract law, the forum selection clause applies to this breach of contract action.

Because the parties consent to venue in Pennsylvania in the forum selection clause, venue is proper in this Court.

### B. The Convenience of the Parties and Witnesses

Even if the Court finds venue is proper, Millionaire moves to transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).[5] Section 1404(a) provides: "For

---

The "execution hereof" clearly refers to the lease in its entirety, not the subparagraph in which the phrase is found. By contrast, the lease adopts explicit language to specify when "hereof" refers to a particular section of the lease: "'Rent' means the 'Annual base Rent', the expenses provided for in *Section 5 hereof* . . . ." Def.'s Mot. Ex. A ¶ 1(d) (emphasis added).

[5] Based on the convenience of parties and witnesses, Millionaire moves for transfer under 28 U.S.C. § 1404(a) or dismissal under Federal Rule of Civil Procedure 12(b)(6). "[A]s a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss." *Salovaara v. Jackson Nat. Life Ins. Co*., 246 F.3d 289, 299 (3d Cir. 2001). Because Millionaire argues that another federal venue is appropriate, it makes better sense, if warranted, to transfer rather than dismiss this action. Therefore, I will only consider Millionaire's motion to transfer pursuant to § 1404(a).

the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Traditionally, in deciding whether to transfer a case, a court must consider "the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (3d Cir. 1995).

September Properties contends that the traditional § 1404(a) analysis should not apply to this case because a valid forum selection clause applies. In the context of reviewing a mandatory forum selection clause, the Supreme Court has held that the traditional § 1404(a) analysis does not apply. *Atl. Marine*, 571 U.S. AT 63. Rather, "district courts (1) must give no weight to the forum preferred by 'the party defying the forum-selection clause'; (2) must deem the private interests to 'weigh entirely in favor of the preselected forum' . . . ; and (3) must proceed to analyze only public interests." *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017), *cert. denied sub nom. Nordyke v. Howmedica Osteonics Corp*., 138 S. Ct. 1288, 200 L. Ed. 2d 471 (2018) (quoting *Atl. Marine*, 571 U.S. at 63-64). When the *Atlantic Marine* analysis applies, district courts should enforce valid forum selection clauses "[i]n all but the most unusual cases." *Atl. Marine*, 571 U.S. at 66.

There are two types of forum selection clauses, however, mandatory or permissive. *Ocwen Orlando Holdings Corp. v. Harvard Prop. Tr., LLC.*, 526 F.3d 1379, 1381 (11th Cir. 2008); *Phillips v. Audio Active Ltd*., 494 F.3d 378, 383 (2d Cir. 2007); *see also Collins*, 874 F.3d at 185 n.8. "A permissive [forum selection] clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, dictates an exclusive

forum for litigation under the contract." *Ocwen*, 526 F.3d at 1381 (internal quotation marks omitted).

In *Atlantic Marine*, the Supreme Court did not address whether to apply this modified § 1404(a) analysis to permissive forum selection clauses. Since *Atlantic Marine*, courts have overwhelmingly held that the modified § 1404(a) approach only applies to mandatory forum selection clauses. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471 (4th Cir. 2018), *as amended* (Mar. 27, 2018) (collecting circuit court cases); *N. Am. Commc'ns, Inc. v. Eclipse Acqui Inc.*, No. 17-167, 2018 WL 651795, at *7 (W.D. Pa. Jan. 31, 2018) (collecting cases and noting that "district courts in the Third Circuit have declined to extend *Atlantic Marine's* strong presumption of enforcing forum-selection clauses to instances where the forum-selection clause is permissive") (footnote omitted)). "Accordingly, determination of whether the forum selection clause here is permissive or mandatory is critical. If it is mandatory, then *Atlantic Marine* controls . . . . If it is permissive, then the traditional forum non conveniens analysis applies . . . ." *BAE*, 884 F.3d at 471-72.

"A general maxim in interpreting forum-selection clauses is that 'an agreement *conferring* jurisdiction in one forum will not be interpreted as *excluding* jurisdiction elsewhere unless it contains specific language of exclusion.'" *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (quoting *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imp. and Distrib., Inc.*, 22 F.3d 51, 53 (2d Cir.1994)). Here, the forum selection clause provides: "For purposes hereof, Tenant consents to venue and personal jurisdiction in the courts of Florida and/or Pennsylvania, and waives any right to a jury in any trial." Def.'s Mot. Ex. A ¶ 15(h). The forum selection clause in the contract is a permissive forum selection clause because it confers jurisdiction in Florida and Pennsylvania, but it does not exclude jurisdiction elsewhere.

Accordingly, the traditional § 1404(a) analysis applies, which requires an evaluation of both the private and public interests to determine whether transfer is appropriate.[6]

In deciding whether to transfer a case, "there is no definitive formula or list of the factors to consider." *Jumara*, 55 F.3d at 879. Private interests that have been considered include:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id*. (citations omitted). Public interests that have been considered include:

> [T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id*. at 879-80 (citations omitted). "The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, and unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp*., 431 F.2d 22, 25 (3d Cir. 1970) (citation and internal quotation marks omitted). "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Id.* (internal quotations omitted).

In this case, Millionaire has not met its burden to establish that the balance of convenience weighs strongly in favor of transfer. In addressing the private factors, the most significant private factor to consider is Plaintiff's choice of forum. September Properties'

---

[6] Even if the forum selection clause designated Florida and Pennsylvania as the exclusive jurisdictions for this action, it is unclear whether and how *Atlantic Marine* would be applied given that both of the forums desired by the parties are designated in the forum selection clause.

elected to bring this breach of contract action in Pennsylvania. The sole member of September

Properties' is a Pennsylvania citizen. The parties agreed in the forum selection clause of their

contract that Pennsylvania would be a proper forum for litigation. September Properties'

decision to litigate in Pennsylvania is of paramount importance because of its relationship to the

Commonwealth and its contractual agreement with Millionaire that litigation would be proper in

Pennsylvania. Although Millionaire's choice of forum deserves consideration, Millionaire has

already indicated in the forum selection clause that Pennsylvania is an acceptable forum. Thus,

it is of less importance that Millionaire now desires to proceed in Florida.

Although Millionaire argues that "[k]ey witnesses . . . may not be willing to travel to

Pennsylvania to testify," Matthews Decl. ¶ 10, Millionaire has not established that any witnesses

would be unavailable to testify at trial or that any books and records could not be produced in

either forum. Therefore, Millionaire has not met its burden to establish that the convenience of

the witnesses and the location of books and records weigh in favor of transfer. Millionaire also

does not argue that the claim arose elsewhere and thus has not met its burden to establish that

this private interest weighs in favor of transfer. Lastly, Millionaire argues that it will incur

significant travel expenses to litigate in Pennsylvania, and this is a reason for transfer. *See*

Matthews Decl. ¶ 10. September Properties counters that it will face an undue burden and

expense if it has to litigate in Florida. Because both parties allege that they would face a

financial burden if they had to litigate in a forum other than the forum of their choosing,

Millionaire has not met its burden to establish that its physical and financial condition weighs in

favor of transfer.

Based on the significant deference accorded to September Properties' choice of forum, and Millionaire's failure to establish any significant private interests in favor of transfer, the private interest clearly weigh against transfer.

The public factors also do not weigh in favor of transfer. Millionaire only argues that the "local interest in deciding local controversies at home" and the "familiarity of the trial judge with the applicable state law in diversity cases" favor transfer. Because Millionaire does not address the other public interest factors, it is presumed that the judgment will be enforceable in either forum and there are no practical considerations, administrative difficulties, or public policies that would render one forum more beneficial than the other.

Millionaire contends that this breach of contract action is a local controversy because Millionaire failed to pay rent after Hurricane Irma damaged the property. Millionaire argues that it was not required to pay the rent because the property was "wholly or partially untenantable because of structural roof and other damages." Mot. 12. Millionaire's arguments stem from provisions of the contract that potentially could excuse it from payment based on "Roof and Structural" or "Fire or Casualty" damage. *See* Def.'s Mot. Ex. A ¶¶ 10, 12. While Hurricane Irma is tangentially related to this contract action, the essential legal issue is whether Millionaire's failure to pay rent breached the contract or is excused under the contract. Millionaire may be a Florida art gallery, but it entered into a contract with a limited liability company whose sole member is a citizen of Pennsylvania. The fact that Millionaire stopped paying rent after a hurricane does not convert this simple breach of contract action into a local controversy of local interest. As for the familiarity of the trial judge with the applicable state law, this Court is confident that it can aptly apply Florida law. Accordingly, Millionaire has not met its burden to establish that the public interests weigh in favor of transfer.

Because both the private interests and the public interests weigh against transfer, there is no reason to transfer this action to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the reasons set forth above, I will deny Millionaire's Motion to Dismiss or Transfer for Improper Venue, or, in the Alternative, to Dismiss or Transfer for Convenience.


s/Anita B. Brody

_____

ANITA B. BRODY, J.


Copies **VIA ECF** on ___9/18/2018___